TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO JEPSON, Special Assistant United States Attorney (#17077)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
111 South Main Street, Ste. 1800, Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PLASTIC SURGERY INSTITUTE OF UTAH, INC.; MICHAEL KIRK MOORE JR.; KARI DEE BURGOYNE; KRISTIN JACKSON ANDERSEN; AND SANDRA FLORES, <br><br> Defendants. | Case No. 2:23-cr-00010-HCN <br><br> UNITED STATES' SUPPLEMENTAL POSITION REGARDING DETENTION OF MICHAEL KIRK MOORE AND KRISTIN JACKSON ANDERSEN <br><br> Judge Howard C. Nielson Jr. |

The United States respectfully submits this supplemental position on detention. Because there is clear and convincing evidence that defendants Michael Kirk Moore and Kristin Jackson Andersen have (each for the second time) violated their conditions of release and are both unlikely to abide by conditions of release, they must be detained pending trial. 18 U.S.C. § 3148.

## I. PROCEDURAL POSTURE

*Charges*: The grand jury returned a three-count felony indictment against the defendants on January 11, 2023. (ECF 1). The indictment alleged that the defendants engaged in deception, theft of government property, and purposeful efforts to defraud and impede a government program.

*Initial appearance*: Defendants appeared at their initial appearance pursuant to summons on January 26, 2023. (ECF 20). At that time, the United States was not seeking detention.

*Release Conditions*: The Court released all the defendants pending trial (ECF 20) and imposed the following release conditions on Moore (ECF 26) and Anderson (ECF 29):

- "Additional Conditions of Release; The defendant must: avoid all contact, directly or indirectly, with any person who is or may be an alleged victim, potential witness and/or codefendant in the investigation or prosecution. . . . **Defendants will not talk about this case amongst themselves**." (ECF 26 at ¶6(c) and ECF 29 at ¶6(c) (emphasis in the original)).

- "report on a regular basis to the pretrial officer as directed" and be fully processed by the United States Marshals. (ECF 26 at ¶6(d) and p. 5 and ECF 29 at ¶6(d) and p. 4)

- "surrender any passport to the United States Clerk of the Court" (ECF 26 at ¶6(l) and ECF 29 at ¶6(l)).

- "maintain or actively seek verifiable employment and/or maintain or commence an educational program as approved by the pretrial officer." (ECF 26 at ¶6(a) and ECF 29 at ¶6(a)).

*First Pretrial Release Violation Petition*: The USPO petitioned the court to revoke the pretrial release of Moore (ECF 72) and Andersen (ECF 77). Both defendants refused to be processed by the U.S. Marshals Service as directed and both defendants refused to submit documentation of employment. Moore also refused to surrender his passport for approximately four months. A pretrial release violation hearing was scheduled for May 26, 2023.

*Sovereign Citizen Filings*: On May 18, 2023, Moore lodged a motion to dismiss for lack of subject matter jurisdiction styled a "Notice of Special Appearance in Propria Persona." (ECF 75). In that filing he "affirm[ed]" and "declare[d]," in a written submission to the Court, that "*this Court lacks jurisdiction, and that it has committed fraud upon the court, fraud upon We the People and fraud ab initio*" by attempting to exercise jurisdiction over him. (*Id*. at 4; *see also*,

*e.g., id.* at 5 (making similar assertions that the Court lacks jurisdiction over him)). In the same "motion," Dr. Moore further moved to *dismiss the criminal complaint against him based on an asserted lack of jurisdiction over him*. (*Id*. at 4). He likened being forced to appear before this Court to being "kidnapped, which [he asserted would be] a crime in and of itself." (*Id.* at 6). He further declared that "[he would] not be appearing in person on May 26, 2023," and moved the Court to vacate the hearing for lack of jurisdiction over him. (*Id.* at 6).

<u>May 26, 2023 Pretrial Release Violation Hearing</u>: Despite Moore's stated refusal to appear at the May 26, 2023 hearing, he and Andersen did appear in Court. (ECF 83). But any apparent compliance on Moore's part ended there. Throughout the hearing, Dr. Moore maintained repeatedly that he was "specially appearing in propria persona," and attempted to deny the Court's jurisdiction over him based on his asserted status as a "sovereign citizen," residing in a "foreign government," outside the jurisdiction of the United States of America.

The United States called Dr. Moore's pretrial services officer to the stand and proved by clear and convincing evidence that Dr. Moore had committed at least two violations of his release conditions. For over four months, Dr. Moore failed to complete processing by the U.S. Marshal's Service as instructed by the U.S. Pretrial Services Office and failed to surrender his passport. (ECF 89 at 2). When the United States recommended that Dr. Moore be detained, Dr. Moore continued to maintain the Court lacked jurisdiction over him. At that point, the Court ordered him detained. In its detention order the Court wrote the following:

> Defendant has failed to turn in his passport and has failed to be processed by the United States Marshal's Service as required by this court's order and by the law. Although resolved shortly before the hearing, defendant also failed for four months to provide financial and employment documentation that the court had ordered in January. Defendant's otherwise technical violations transcended the threshold of being minor when, after a full *Faretta* hearing, defendant asked that his voluminous objection to this court's

jurisdiction be filed, which is a compilation of legal gibberish associated with the sovereign citizen movement. To be clear, the court is not revoking pre-trial release because defendant holds these beliefs commonly associated with sovereign citizens. Instead, his filing overtly demonstrates that he will not abide by conditions of release because he does not believe he must comply with them given his counterfactual view that this court lacks jurisdiction over him and over the subject matter of this case. Defendant then reaffirmed his nonsensical legal views repeatedly in both his *Faretta* and pre-trial release violation hearings today despite the court's warnings that those arguments had no legal effect whatsoever. Defendant was undeterred and further demonstrated his likelihood of continuing to ignore orders of the court. Consequently, under 18 U.S.C. §3148, the defendant is detained pending trial because he is unlikely to abide by the court's conditions. (ECF 89).

Kristin Andersen, by contrast, admitted to allegations 1-2 of the petition and her attorney promised strict compliance. She was admonished by Judge Bennett at that hearing that it appeared the defendants were communicating with each other, which was another violation of their pretrial release conditions, and that this activity should cease immediately.

*Moore's Motion for Review of Detention*: After a short time in jail, Dr. Moore indicated he wanted to abandon his sovereign citizen views, hired Nathan Evershed, and sought review of his detention. (ECF 97, 100, 102). The United States opposed the defendant's release, arguing that he was unlikely to comply with the Court's release conditions. At that hearing, Nathan Evershed claimed that Dr. Moore no longer espoused the sovereign citizen beliefs and would comply with all the Court's orders.

*Moore's Release and Additional Release Conditions*: On June 6, 2023, The Court allowed Dr. Moore's release with added release conditions of home detention; curfew; computer, email and text monitoring, and GPS monitoring. (ECF 104). On August 16, 2023, the Court agreed to remove the GPS monitoring condition. (ECF 119). Nathan Evershed withdrew as counsel on April 5, 2024. (ECF 138).

## II.  CURRENT VIOLATIONS OF PRETRIAL RELEASE

Defendants Andersen and Moore, as recently as a few weeks ago, have been violating pretrial release condition 6(c) "Defendants will not talk about this case amongst themselves."

*In-person meetings*: Kari Burgoyne met with the prosecution on October 31, 2024 and indicated that co-defendants Andersen and Moore had been violating the pretrial release condition of not discussing the case. She explained that after indictment, Moore, Andersen, and Burgoyne held weekly meetings on the third floor of PSI to discuss the charges and how to "get out" of them. Burgoyne confirmed that there was at least one meeting like this after Moore was released from jail. She recalled specifically that Moore wrapped his GPS ankle monitor with a towel because he feared that probation was listening to his conversations.

*Signal Communications*: Moore was on a text and computer monitoring condition after his release. Thus, according to Burgoyne, Moore insisted that the co-defendants set up the Signal Messaging app so that they could continue to communicate covertly. Burgoyne permitted agents to review her phone regarding these communications. Agents captured these messages that confirm Andersen, Moore, and Burgoyne were members of a Signal Messaging group called "Legal Defense"—with Moore adding Burgoyne to the group. The messages between Moore and Andersen substantively discuss the case in direct violation of their pretrial release conditions.

For example, on October 17, 2024, Moore sent the following message to Andersen and Burgoyne:

> Kris, Kari, As you both know we have a hearing tmrw about our motion to dismiss (MTD). It would be beneficial if you and your attys would be there. Kari, can you speak to my attys and answer some of their questions regarding how we obtained the vials and cards, who we contacted, who delivered them etc? That's a part of the process I was not really involved in  Kris, do you know of any of our patients that would be willing to testify as to tue necessity of them getting a card that permitted them to stay employed, get

medical procedures, travel for work, care for a family member, etc? We may need some if we lose the MTD and prevail in the motion to allow a necessity defense Thank you



*Marked for Identification as Government's Exhibit 01*

//

//

//

//

//

//

On October 17, 2024, Andersen responded "Yes I will work on it." She also messaged, "Bethany last person kidney transplant."



*Marked for Identification as Government's Exhibit 02*

//

//

//

//

On October 18, 2024 (the same day as a motion hearing before Judge Nielsen (ECF 174), Moore messaged his codefendants sending a link to a song entitled "Take it All Back" with the comment "Let's do this ONE and DONE today !!"



*Marked for Identification as Government's Exhibit 03*

### III.   THE DEFENDANTS ARE UNLIKELY TO ABIDE BY CONDITIONS OF THEIR RELEASE

This is second round of Andersen and Moore's pretrial release violations. They have repeated demonstrated, from the inception of the case, that they have no intention of obeying the conditions of their release. Despite being warned, admonished, reproved, cautioned, and reprimanded by this Court multiple times about not communicating substantively about the case, they continue to do it. Indeed, they have repeatedly demonstrated knowledge of these release

conditions and has taken specific steps to violate them with full understanding of their actions. Nor are there conditions that the Court could impose that would assure compliance as established by the failure of the text message monitoring—Moore and Andersen pivoted to an app that would allow them to communicate and evade detection. These communications would have continued to be undetected without the assistance of a co-defendant.

Burgoyne further revealed during her debrief that *after* the indictment, Dr. Moore instructed her to destroy the remaining COVID-19 Vaccines that were stored and refrigerated on the third floor at PSI. Accordingly, it is likely the United States will be seeking a superseding indictment to charge Moore with obstruction of justice.

Dr. Moore has been posting to X during the pendency of this case under the handle @Moore22K, "Dr. Kirk Moore, AWAKE!" with this profile picture:
In an August 13, 2024 audio recorded interview posted to his X account, Dr. Moore stated the following:



> My motto, I had some t-shirts made that say *Noli Parere* on it, which means do not comply. Um, and, and, and that's that's kind of where I'm, I'm just, you know, I'm, I'm not gonna let people tell me what I need to do or not do, um, I'm gonna rely on my ethics and morals and my own values, um, and I'm not gonna let anybody tell me what I can or can't say and I'm gonna live with the consequences of me saying that.

Dr. Moore has broadcast to the world that his motto is literally "do not comply". He has announced he is going to do what he wants, say what he wants, and live with the consequences. The Court should believe him.

Andersen is likewise defiant and unmanageable. Initial reports of Andersen's arrest indicate that the US Marshals pulled her car over, identified themselves, and notified her that they had a warrant for her arrest. In response, she refused to exit and used her phone to speed

dial someone. Fearing that she was tipping off Moore, the Marshals removed the phone from her hand and forcibly removed her from her car. This type of behavior by a defendant who is on pretrial release creates a significant risk of danger to law enforcement and the community. This easily could have escalated.

Moore and Andersen have repeatedly demonstrated that they do not respect the authority of the Court and that they will not abide by conditions of release imposed by this Court, even if they are admonished, and even if their attorneys provide the Court with assurances to the contrary. We have been down this road before with these two defendants. If they are released, they will violate again. They should be detained pending trial.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney

*/s/ Jacob J. Strain*
JACOB J. STRAIN
Assistant United States Attorney